Haynes, J.
A petition is filed in this case to enforce a judgment obtained by Maclaren & Sprague against John J. Stone. The petition sets up that at a certain date Maclaren & Sprague obtained a judgment of some seven or eight hundred dollars against John J. Stone. It sets up substantially that John J. Stone was a married man, and his wife, Margaret Stone, was the owner of certain real estate in this city; that she is since deceased, and that the defendant, John J. Stone, is possessed of certain dower rights in her property ; it avers that plaintiffs caused an execution to be issued and other property, they levied the execution upon the interest of John J. that finding no property upon which to levy, no goods and chattels, or Stone in this property; that after the judgment had been rendered and before the levy Stone had released all his dower interest to his children.
During the lifetime of Mrs. Stone, Mr. and Mrs. Stone had executed a mortgage on the property to a certain bank in this city, by whom the mortgage was transferred to William Peter, who appears here as one of the defendants and files an answer and cross-petition, setting up that that mortgage is a valid subsisting and unpaid mortgage, and asks to have a decree of foreclosure.
There are other defendants who have some liens which have been set up; among others is a mortgage of $2,000, which is now in the hands of a bank in this city, which was made after the death of Mrs. Stone, by John J. Stone as gua.rdian of his minor children, who claimed that proceedings were had before the probate court of this county, in a case wherein John J. Stone, as guardian, was plaintiff or petitioner, whereby he was authorized to execute a mortgage upon said premises for the sum of $2,000 to Alvin Peter for a certain specific purpose, and that at the same time one of his sons, who was of age and could act for himself, agreed to also sign the mortgage. There were other children of his who were minors, who were made parties to the suit, or attempted to be made parties, and representing their interests, he undertook to make the mortgage for them also. The mortgage was drawn and was executed by John J. Stone, as guardian, and by this son who was of age, Frederick W. Stone.
At the time of the execution of this mortgage, Alvin Peter advanced $300 upon it, with the knowledge and assent of Frederick W. Stone, and for some reason, the matter then fell through and nothing further was done by way of any advances, nor were any steps taken by Alvin Peters in regard to paying the balance of the $3500. Among other things, it was expected that the above mortgage, which was subsequently sold to William Peter, would be taken up; which was not done, William Peter bought the mortgage from the bank. Subsequent to this, Alvin Peter transferred this other mortgage to the bank, who now holds it.
*855 These are the outlines oí the facts in the case. Now, the. first question that is raised here to which we will give attention is, the right of the plaintiffs on the matters at issue between them and these defendants. I should say that John J. Stone himself filed no answer; the issues that are raised, are raised on the answers of the various defendants, minor defendants and children of John J. Stone.
The plaintiffs claim that they have a lien upon the dower estate of John J. Stone in the premises in question. They claim that John J. Stone had such an estate in that property that it was subject to a judgment lien and subject to levy upon execution.
Section 4188, Rev. Stat, provides that a widow or widower who is not estopped, has an estate for life in one-third of the real property of which the deceased consort was seized as an estate of inheritance at any time during the marriage, etc.
The plaintiffs claim that the word “estate” imports such an estate in the land as that it is properly the subject of the lien of a judgment and is subject to a levy upon execution. They claim that it differs from the dower of the widow as it existed under the old law, in this, that that was simply a right to have a dowier estate assigned in the property, while this, by force of the statute, is, upon the death of the wife, an estate vested in the husband.
The question is an interesting one, and at first sight seems to have some force. We are, however, inclined to the opinion that the legislature did not intend to change the character of the dower estate; that the dower interest of a wife remains as it was before the passage of this statute, and the dower interest of the husband is of the same quality and character as the dower of the wife. On the whole the word “estate” is the particular word that counsel relies upon and about which argument centers. Now, the word “estate” is defined in Anderson’s Dictionary of Law, which seems to be a standard work, among other things, as the quality of interest which a person has in land, from absolute ownership down to naked possession, that it does not import a fee or even a freehold, but any legal interest in land. It imports merely the relation that a party has to the land, not the quantity of interest. Now, the interest of a dower estate as it existed before this act was passed, was an interest that was to be set apart to the widow by metes and bounds, one-third of the land of the decedent; if that could not be done then she was to have set off to her a certain portion of the rents and profits. We are unable to see why the interest of a party was not as great under that law as it is under this statute, and we think using the word estate meant simply nothing more or less than the interest which the party had in the land of the decedent; that is, the right to have the use of one-third of it during life, or the one-third of the rents and profits. There certainly would be no such interest vested in the party that it could be made the subject of partition. It depended alone upon the action of the court in setting apart, under proper proceedings and by commisioners properly appointed, of that portion of the estate which the party is entitled to have in their judgment in the lands of the deceased, or if that cannot be done, to fix a portion of the rents and profits which the party shall have. It is an estate because it is an interest in that land, and that is about as much as can be said about it. In all of the different and various estates which a party may-have in land, this perhaps in quite a limited one. Mere possession of land for a number of years is an estate, so going on up until we reach the highest, which is an estate in fee.
We are therefore of the opinion that so far as the life estate is concerned, that it was not such an estate as was subject to levy under that .execution.
*856 But the petition is so framed that in our judgment it asks that the plaintiffs may have enforced their claim or right upon this property. They ask that the conveyance of real estate that was made by John J. Stone to his children should be set aside, and that they may have a sale of the dower interest. We think under the decision of the Supreme Court in Boltz v. Stotz, 41 O. S., 540, that the plaintiffs under this petition are entitled to a decree giving them a right to a sale of the' interest of Stone in the property. Now, in the case cited, the court of common pleas had found that the widow was entitled to a certain dower interest in the premises that she failed to have set off because she wanted to avoid! the claim of the plaintiff; thereupon the court appointed a receiver and directed that receiver to proceed to file a petition to have the dower assigned, or, if dower could not be assigned, then the receiver should collect the rents and profits, after that was done to pay the money over to the plaintiff until his debt was paid, and after that to repay the balance to the other party; and the Supreme Court Commission affirmed the common pleas in that case, and it stands today as the law of the State of Ohio. In that case the court say:
“If the assignment of dower is once made it may be reached by the widow’s creditors by execution. There is no reason for relieving it from this burden when unassigned, that does not apply with euqal force to assigned dower. To hold otherwise would be a temptation to the possessor of this interest in lands, and it is sometimes a very valuable interest, to continue in joint possession with the heirs, and to neglect to ask for a formal assignment for the purpose of depriving her creditors of the benefit of her right of dower for the satisfaction of their claims. In this case it appears that Mrs. Boltz did not have her dower assigned for the purpose of keeping this property beyond the reach of her creditors.”
In regard now to the release that, has been made by John J. Stone to his children. It clearly appears in the evidence and that is not disputed, that this was a voluntary conveynace, so far as the children were concerned. It was made while this debt was in existence. It is said however, that there should have been proof adduced by the plaintiffs that John J. Stone was insolvent, or had no other property that could be applied to the payment of this debt at this time.
In the case of David W. Oliver v. Charles L. Moore et ux, 23, O. S., commencing at page 473 — the syllabus of the case reads:
“4. In an action by a creditor for the purpose of subjecting property in the hands of a donee to the payment of his claim, it being made to appear that the debt was contracted by the doner prior to the making of the gift the burden of showing the solvency of the debtor at the time of making the gift rests upon the defendant.”
John J. Stone himself makes no answer. His children claiming under him claim an estate, and so far as that is concerned, they have taken upon them the same burden and the same obligations rest upon them to make the proof as would rest upon him.
So far as the mortgage to Willian Peter is concerned, a decree may be taken upon that according to the prayer of the cross-petition.
In regard to the mortgage made to Alvin Peter, without discussing it, we are of the opinion that mortgage is good simply for the sum of $300, and that against th'e property of Frederick W. Stone alone, and a decree may be taken for that amount as against his interest and his interest only.
Now in regard to the question that that is raised as to Mrs. Stone being surety, and these children entitled to have some relief, by reason of her suretyship, we have this to say; we are satisfied that she stands in the position of a surely to John J. Stone in this suit. She had the title of *857 this property, and Stone had placed upon this property buildings and undoubtedly materials that he had purchased from his various creditors had gone into those buildings, though it is not clear that the materials that were purchased from these plaintiffs went into that building; but he had placed this building upon her land, and it appears that at the time the mortgage was made that she was to have $500 of the money and that he was to have $1000 to use. We think the testimony should have been very clear to show that he was doing this for his own benefit rather than for the joint benefit of the two. The moral obligation rested upon her to aid in repaying the debt he had incurred for the materials that had gone into that building on this property and for work and labor done on the same.
R. S. Holbrook, for plaintiffs.
Brown & Geddes; T. J. McDonnell; Justin Tyler, for defendants.
We think that the decree should be drawn so that the property may be sola upon the cross-petition of William Peter and the money brought into court- and after the payment of the mortgage upon which sale is made, that the dower interest of Stone should be computed and allowed to plaintiffs. If the mortgage should be paid by any one and no sale made under it, then the dower interest of Stone should be sold or subjected to the payment of plaintiff’s claim in the manner pointed out in the case of Boltz v. Stotz, cited above.
We think this case better be kept here and the decere or order of sale of the premises issued out of this court, and the order may be made that the sale be made and the money brought into this court.